IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THEODORE MARTINEZ,

          **Plaintiff,**

vs.                                                                              Civ. No.  14-296 JCH/LAM

CORRECTIONAL HEALTHCARE
COMPANIES, INC., et al.,

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions jointly filed by two Defendants, the Board of County Commissioners for the County of Bernalillo and Ramon Restin. The first is their *Motion for Summary Judgment for Failure to Comply With the Prison Litigation Reform Act* [Doc. 49], and the second is their *Motion to Dismiss John and Jane Doe Defendants* [Doc. 51]. Defendants Correctional Healthcare Companies, Inc. ("CHC"), Timothy McMurray, M.D. ("McMurray"), and T. Trapp, M.D. ("Trapp) joined in both motions, along with third party defendant Symphony Diagnostic Service ("Symphony). *See* Docs. 57, 58, 67, and 68.

Since that time, several parties have been dismissed from the case. On August 25, 2015, this Court granted a joint motion to dismiss filed by the Plaintiff, the Board of County Commissioners for the County of Bernalillo, and Ramon Restin, thereby terminating Plaintiffs' complaints against those Defendants. Doc. 115. On July 30, the Court granted a stipulated motion to dismiss the claims in the third-party complaint by CHC against Symphony, thereby eliminating Symphony as a party to this litigation. Doc. 106. In addition, on August 19, 2015, the Court entered a Stipulated Order granting the motion by CHC, McMurray and Trapp, which was

unopposed by Plaintiff, dismissing Plaintiff's claims against unnamed John and Jane Does. Doc. 110. The August 19, 2015, Stipulated Order effectively rendered moot the *Motion to Dismiss John and Jane Doe Defendants* [Doc. 51], and it will be denied as such. However, still pending before this Court is the *Motion for Summary Judgment for Failure to Comply With the Prison Litigation Reform Act* [Doc. 49] as it relates to Plaintiff's claims against Defendants CHC, McMurray, and Trapp.

After considering all the briefs and evidence submitted by the parties, the Court concludes that the motion for summary judgment should be granted in part and denied in part as described herein.

## BACKGROUND

This lawsuit stems from the alleged lack of proper medical treatment given to Plaintiff Theordore Martinez ("Martinez") by Defendants while he was in their care as a prisoner at the Bernalillo County Metropolitan Detention Center ("BCMDC"). In his First Amended Complaint [Doc. 30], Martinez alleges that CHC contracted with BCMDC to provide healthcare at the facility, and that McMurray and Trapp were physicians employed by CHC. Martinez is asserting claims of failure to provide medical care and treatment, cruel and unusual punishment, failure to train and supervise, and unconstitutional custom, policy, or practice, all in violation of his Eighth Amendment rights. He brings these claims pursuant to 42 U.S.C. § 1983. In addition, Martinez asserts state law claims of negligence; negligent hiring, training, and supervision; and medical negligence. The motion for summary judgment before the Court raises the issue of whether Martinez' federal claims are barred for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997.

## **LEGAL STANDARD**

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*

*Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## EXHAUSTION REQUIREMENTS UNDER THE PLRA

In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq.; *Woodford v. Ngo*, 548 U.S. 81, 97 (2006)(Congress enacted the PLRA to reduce the "disruptive tide of frivolous prisoner litigation."). Among other reforms, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a). To achieve this end, the statute includes an "invigorated" exhaustion provision, which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford*, 548 U.S. at 84, 126 S.Ct. 2378. Indeed, "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Because the prison's procedural requirements define the steps necessary for exhaustion, *id*. at 218, 127 S.Ct. 910, an inmate may only exhaust by properly

following all of the steps laid out in the prison system's grievance procedure. *Woodford*, 548 U.S. at 90.

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 95. Thus, "[i]n *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' ...—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88, 126 S.Ct. 2378).

The plain language of the PLRA requires that prisoners exhaust only available remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies as are available are exhausted." (emphasis added)). The Tenth Circuit has state that "[i]t follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it. . . . To be 'available,' a remedy must be 'capable of use for the accomplishment of a purpose.'" *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)). Although the grievance procedure was unavailable to the inmate in *Tuckel* because prison officials beat him in retaliation for using that procedure, it stands to reason that the remedy is also "unavailable" within the meaning of the PLRA if the inmate's medical condition prevents him from accessing it. District courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust. *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. *Id*. Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him. *Tuckel*, 660 F.3d at 1254.

## SUMMARY JUDGMENT FACTS

Although neither party has provided evidence of this fact, it appears that all parties agree that at all times relevant in the First Amended Complaint Martinez was incarcerated in the BCMDC, and that on or about March 9, 2012 he suffered a knee injury while exercising. The claims in the First Amended Complaint stem from Martinez' contention that Defendants failed to provide him with adequate care for that injury.

At all relevant times, the BCMDC had in place an inmate grievance procedure. The BCMDC grievance procedure that Defendants attached to their motion provides, in relevant part, that inmates may file a grievance when they have been unable to resolve those complaints informally with staff. Doc. 50-1 at Ex. 1. An inmate must file a grievance through "Request Manager"[1] within 10 days of the incident or situation the inmate is grieving. Doc. 50-1, Ex. 1 at §§ A(1), C(1) and C(6). At that point, the Chief of Corrections has three days to forward the grievance to the appropriate department manager for response, and all grievances must be answered. *Id*. at § D(2). Department managers have ten days to review and answer each grievance, at which point the grievance is closed. *Id*. at § C(4). If the inmate is not satisfied with the answer he receives, he has five days to file an appeal in Request Manager. *Id*. at §§ C(5),

---

[1] The grievance procedure presented to the Court does not explain, describe, or define "Request Manager." Further, neither party has provided admissible evidence in the form of an affidavit or deposition testimony as to the nature of "Request Manager," though the Court has inferred that it is a computer kiosk that allows inmates to submit their grievances electronically.

D(2). The Assistant Chief and Operations Administrator have five business days to investigate and rule on the appeal. *Id.* at § D(5). The ruling must be provided to the inmate through Request Manager. *Id.* at § D(6). The inmate then has five days to appeal that decision to the Chief of Corrections. *Id.* at § D(7). The grievance procedure does not state the length of time in which the Chief of Corrections must issue his decision, but merely that his "is the last and final word on the grievance." *Id.* at § D(8).

In an Affidavit [Doc. 60-1], Martinez says that between March 16, 2012 and March 31, 2012, he became concerned about his leg and was doing everything he could to get medical attention. According to Martinez, he filed a grievance with BCMDC "using the old paper grievances that were available," and that he "put the grievance in the mailbox" as he had been directed to do. Martinez does not state specifically in his affidavit the basis of this grievance. He states that his "best guess" is that he filed the grievance on March 22, 23, or 24. Martinez states that he kept a carbon copy of the grievance and kept it in his cell. However, he states that sometime after that, he was placed in the medical segregation pod and then transferred to the University of New Mexico Hospital ("UNMH") without an opportunity to return to his cell to retrieve his belongings. He states that on the day he went to medical segregation, BCMDC was preparing to install the "Request Manager kiosk." According to Martinez, while he was at UNMH he was prohibited from corresponding with anyone. On May 15, 2012, Martinez returned to BCMDC. Doc. 61-3, Ex. D. According to Martinez, when he returned to BCMDC all of his possessions, including his copy of the grievance, were gone. Doc. 60-1.

Defendants dispute the assertions in Martinez's affidavit. They present the affidavit of Philip Quintana, Social Services Coordinator at BCMDC. Doc. 61-1, Ex. B. According to Quintana, whose duty it is to process and track grievances filed by inmates, from 2006 through

7

2012 the inmates had to request paper grievance forms from their Grievance Case Manager and then fill out the grievance form while the Grievance Case Manager waited. Then, the paper grievance was scanned into the facility's computer system, becoming part of the inmate's permanent record. Quintana also states that no paper grievance forms or grievance mailboxes were available to inmates in their units in 2012. In her affidavit, Doc. 61-2, Ex. C, Michelle Bruce states that she was the Grievance Case Manager at BCMDC in 2012 performing the intake of grievances for Martinez's assigned pod. Bruce avers the same facts about the process of submitting paper grievance forms in 2012 as set forth by Quintana. If Quintana and Bruce's testimony is accepted as true, then Martinez could not have submitted a paper grievance in March of 2012 in the manner described in his affidavit. On the other hand, from this testimony it appears that the grievance procedure that Defendants attached to their motion for summary judgment could not have been in effect in March of 2012 because it requires the inmate to utilize Request Manager, not a paper grievance. It is unclear when the grievance policy provided by Defendants became effective; the "Effective Date" field is blank. This leaves open to question what grievance policy was in effect in March of 2012, and what its provisions may have been. According to Quintana, Martinez did not file a paper grievance in March of 2012, nor did he appeal any such grievance.

On May 29, 2012, Martinez filed a grievance using the "new" Request Manager. Doc. 50-1, Ex. 2. In this grievance, Martinez complains specifically about the way BCMDC medical staff treated him between March 16 and March 30, 2012. Doc. 61-4 at p. 4. BCMDC's records show that an hour after Martinez filed this grievance, Defendants reassigned him to the medical unit. Then, on June 8, 2012, BCMDC closed the May 29 grievance, noting "Inmate has been sent to UNMH to treat his condition." There is nothing to suggest that BCMDC denied the grievance

for any reason, including untimeliness. Further, according to Martinez's affidavit, it was never explained to him that his grievances were rejected or denied, and that as far as he knew, his grievances were accepted because he got the medical care he needed, though it came too late after he endured permanent damage to his knee. It is undisputed that he never appealed the May 29 grievance.

> Finally, Quintana states that he has reviewed Martinez's grievance history and
>
> although plaintiff complained about various issues between May 16th and May 29th, 2012, he never complained that his belongings were missing upon his return to MDC in May. Additionally, he did not file a grievance indicating that he felt that the care he received after he returned to the facility was inadequate.

Doc. 61-1, Ex. B.

## **DISCUSSION**

Defendants argue that Martinez's claims should be dismissed for failure to exhaust his administrative remedies at the BCMDC. They contend that: (1) Martinez never filed a grievance in March of 2012, when a complaint about his lack of medical treatment would have been timely, and (2) the grievance Martinez did file on May 29, 2012 related to his lack of medical treatment two months earlier, and therefore was untimely. In response, Martinez raises six arguments. First he contends that he did, in fact, file a paper grievance in March of 2012, and that his affidavit creates a fact question on that issue that would preclude summary judgment against him. Second, Martinez argues that BCMDC's grievance policy is vague and should be construed in his favor. Third, Martinez argues that his May 29, 2012 grievance was accepted and resolved by BCMDC, precluding the need to file an appeal. Fourth, he contends that his May 29, 2012 grievance also applies to his contention that he was denied adequate medical care after he returned to BCMDC in May of 2012. Fifth, Martinez contends that even if the Court concludes that he cannot show that he filed a timely grievance, Martinez still followed BCMDC's grievance procedures because

9

he addressed his grievance informally until he received the medical care he required, as required by the applicable grievance procedure. Sixth, he contends that any failure to comply with the grievance procedure should be excused because the grievance procedure was unavailable to him during the period of his severe illness and subsequent transfer to UNMH.

The Court need not consider all of these arguments, however, because it concludes that Defendants have not met their burden to prove the affirmative defense that Martinez failed to exhaust his administrative remedies. First, Defendants have failed to show what specific grievance procedure was in place in March of 2012, when Martinez was injured. The grievance procedure Defendants provided the Court has no effective date and includes a requirement—the use of Request Manager to file grievances—that Martinez could not have satisfied in March of 2012, as Defendants' own witnesses have testified. According to Quintana and Bruce, in March of 2012 Martinez would have been required to request a paper grievance form and fill it out while his Grievance Case Manager waited. Thus, Martinez could not have complied with the grievance procedure Defendants provided this Court. Without proving what the applicable grievance procedure was, Defendants cannot prove that Martinez failed to exhaust it.

Second, the Court agrees with Martinez that Defendants waived their objection to the untimeliness of his May 29, 2012 grievance in which he complained that his medical treatment in March of 2012 had been inadequate. Even assuming that the May 29 grievance was untimely under whatever grievance procedure was in effect at BCMDC at that time, Defendants waived that objection through their response to the May 29 grievance. Evidence provided by Defendants to this Court shows that rather than deny Martinez's May 29 grievance as untimely, Defendants promptly reassigned him to the medical pod, and subsequently sent him to UNMH and scheduled him with a physical therapist. Defendants have offered no evidence to suggest that they denied

the grievance for any reason, including untimeliness. Nothing in the record suggests that Martinez would have had any reason to know that his May 29 grievance was denied such that he may have had reason to file an appeal. The Second Circuit has recognized three exceptions to the PLRA's exhaustion requirement: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). The Court concludes that in this case, the second exception applies and that Defendants have waived their argument that the May 29, 2012 grievance was untimely. Because the May 29, 2012 grievance relates to Martinez's claims that he received inadequate medical treatment at BCMDC in March of 2012, the Court concludes that Defendants have failed to prove that he did not exhaust administrative remedies as to those claims.

However, the same cannot be said for Martinez's claims that he received inadequate medical treatment at BCMDC in May of 2012 after his return from the hospital. Defendants contend that Martinez never filed any grievance relating to that treatment, and the records provided by Defendants to the Court support their position. Although Martinez attempts to argue that the May 29 grievance relates to his treatment after he returned to BCMDC, the grievance itself suggests otherwise. In his own words, Martinez's grievance states that it relates to care he received from March 16 through March 30 of 2012. While Martinez included some detail about his treatment during that period, he makes no mention whatsoever regarding his treatment at BCMDC in May of 2012. Furthermore, Martinez has come forward with no evidence of any other grievance he may have filed regarding his treatment in May of 2012. Accordingly, the

Court concludes that Martinez failed to exhaust his administrative remedies with regard to his claims that he received improper medical treatment in May of 2012 when he returned to BCMDC. Accordingly, those claims will be dismissed.

**IT IS THEREFORE ORDERED** that:

(1)     *Motion to Dismiss John and Jane Doe Defendants* [Doc. 51] is **DENIED AS MOOT**;

(2)     *Motion for Summary Judgment for Failure to Comply With the Prison Litigation Reform Act* [Doc. 49] as it relates to Plaintiff's claims against Defendants CHC, McMurray, and Trapp is **GRANTED IN PART AND DENIED IN PART**;

(3)     Plaintiff's federal claims regarding his medical treatment by Defendants in May of 2012 are **DISMISSED** for failure to exhaust administrative remedies, but his federal claims regarding his medical treatment in March of 2012 will go forward;

(4)     Plaintiff's state law claims are unaffected by this Memorandum Opinion and Order.

_____
**UNITED STATES DISTRICT JUDGE**